**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

———————————————————

Ashaunti Quantay Prowell,                           Civ. No. 09-2409 (JRT/JJK)

        Plaintiff,

v.

PK, Staff; Dr. Andrew Schock; M.D.
Tore Detlie; Yaser El-Mammamy;                      **REPORT AND**
Daniel C. Randa; Jeffrey J. Roberg;                 **RECOMMENDATION**
Martin Zadnik; and Linda Loken;

        Defendants.

———————————————————

Ashaunti Quantay Prowell, Atwater U.S. Peniteniary, P.O. Box 019011, Atwater, California, 95301, Plaintiff, *pro se*.

Kelly A. Putney, Esq., and Rachel B. Peterson, Esq., Bassford Remele, counsel for Defendants Martin Zadnik, Yasser El-Hammamy, and Linda Loken.

Henry A. Parkhurst, Esq., and Barry G. Vermeer, Esq., Gislason & Hunter, counsel for Defendants Andrew Schock, Daniel Randa, and Tore Detlie.

Chad W. Strathman, Esq., Emergency Physicians P.A., counsel for Defendant Jeffrey J. Roberg.

———————————————————————————

JEFFREY J. KEYES, United States Magistrate Judge

      Plaintiff, a federal prison inmate, is attempting to sue various health-care providers who allegedly violated his federal constitutional rights.  Plaintiff's claims are set forth in his Third Amended Complaint.  (Doc. No. 43.)  Seven of the eight named Defendants have filed various motions seeking to have this action

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[1]  (Doc. Nos. 62, 68, 74.[2])
Defendants contend that Plaintiff's Third Amended Complaint fails to state any
cause of action on which relief can be granted.

Defendants' motions to dismiss have been fully briefed by the parties, and
the matter has been referred to the undersigned Magistrate Judge for a Report
and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the
reasons discussed below, this Court recommends that Defendants' pending
motions be granted, and that this action be dismissed.

## BACKGROUND

In March 2006, a federal criminal complaint was filed against Plaintiff in the
United States District Court for the District of Minnesota, charging him with
attempted bank robbery.  *United States v. Washington*, Crim. No. 06-107 (3)
(DWF/SRN).  He later entered a guilty plea in that case, and on November 13,
2006, he was sentenced to 78 months in federal prison.  Plaintiff is currently

---

[1]  The eighth Defendant is identified only by the initials "P.K."  Plaintiff has
furnished no evidence that service of process has been effected on Defendant P.K.
The Court will therefore recommend that this action be dismissed, without prejudice,
as to P.K., for lack of timely service.  The Court also notes that there is a ninth
Defendant listed in the caption of the Third Amended Complaint, Diane Grinde, but
this action has already been dismissed as to that Defendant.  (*See* Doc. No. 49,
5/18/10 Order.)

[2] Defendants Andrew Schock, Daniel Randa, and Tore Detlie jointly filed a
motion to dismiss (Doc. No. 62); Defendants Linda Loken, Martin Zadnik, and
Yasser El-Mammamy jointly filed a separate motion to dismiss (Doc. No. 74); and
Defendant Jeffrey J. Roberg filed his own separate motion to dismiss.  (Doc. No. 68.)

serving his sentence at the United States Penitentiary in Atwater, California.

Plaintiff's current lawsuit stems from a series of events that allegedly occurred during the period of November 19–25, 2006, which was shortly after he was sentenced in his federal bank-robbery case. As far as this Court can tell, all of the events described in Plaintiff's Third Amended Complaint (hereafter "TAC" or "the Complaint"), allegedly occurred while Plaintiff was a patient at a place described as "Mercy Hospital."[3] Plaintiff alleges that after leaving Mercy Hospital, he "return[ed]" to Anoka County Jail. (TAC at 4, ¶ 7.) This implies that he was confined at Anoka County Jail before and after the events at Mercy Hospital that gave rise to this lawsuit. Plaintiff apparently was detained at the Anoka County Jail from the date of his sentencing (November 13, 2006), until he was transferred to a federal prison facility – except for whatever time he spent at Mercy Hospital.

Plaintiff alleges that on November 19, 2006, he was seen by Defendant Dr. Jeffrey J. Roberg at the Emergency Department at Mercy Hospital. (TAC at 2, ¶ 1.) (The current Complaint does not explain why Plaintiff was at the hospital, or how he got there.) Roberg allegedly performed a "preliminary examination" on Plaintiff, and summarized his findings as follows:

'Patient may have lumbar contusion and there were degenerative

---

[3] In Plaintiff's original pleading, he identified "Mercy Hospital" as a hospital located in Anoka County, Minnesota. (Doc. No. 1, Compl. at 3.) The Court assumes that this is Mercy Hospital, 4050 Coon Rapids Blvd., Coon Rapids, Minnesota in Anoka County.

disc changes.'. . .  1) closed head injury 2) Cervical strain 3) Lumbar contusion and 4) Bilateral lower extremity weakness.

(*Id.*)  Roberg allegedly discussed his findings with two "senior doctors," including Defendant Martin Zadnik.  The Complaint does not describe any other acts or omissions by Defendant Roberg.

Plaintiff alleges that on November 20, 2006, Defendant Andrew Shock,[4] "submitted an assessment for the neurosurgeon."  That assessment (which apparently pertained to Plaintiff), said that –

there is associated lumbar back pain and decreased motor and sensation especially in the lower extremities with this.  This may represent a spinal contusion and he may recover some motor and sensation function over the next couple of days.  At this point, it does not appear to be surgical condition.

(*Id.* at 2, ¶ 2.)  Based on this alleged assessment (and nothing more), Plaintiff claims that Defendant Schock "was deliberately indifferent to the plaintiffs [sic] medical needs because he misdiagnosed the plaintiffs [sic] condition as one that would not need surgery which could have prevented the subsequent surgery."

(*Id.*)

That same day, November 20, 2006, Defendants Linda Loken[5] and Martin Zadnik, allegedly wrote a "status report" about Plaintiff, which said –

---

[4]  The letters "P.A." appear after Schock's name, which presumably signifies that he is a Physicians' Assistant.

[5]  Loken's name is also followed by the letters "P.A.," suggesting that she too must be a Physicians' Assistant.

4

> there's soft tissue swelling R lateral and no sensation below waist
> except slight sensation at bottom of feet.  Able to wiggle R toes some
> but no other movement evident in either leg.

(*Id.* at 2, ¶ 3.)  Based on this allegation alone, Plaintiff claims that Defendants

Loken and Zadnik acted "with deliberate indifference to the Plaintiff's medical

needs by refusing to properly treat the Plaintiffs medical condition other than

'malingering.'"  (*Id.* at 3, ¶ 3.)

On that same day (again, November 20, 2006), Defendant Dr. Tore Detlie

allegedly wrote a "final report" based on Plaintiff's "CT's and MRI's," which

purportedly said that –

> there is no evidence of lumbar spine fracture or subluxation . . .
> there is no evidence of thoracic spine fracture or subluxation . . .
> small broad based protrusion/herniation.  Adequate sized central
> spinal canal and neural foramina . . . [and] no abnormalities of the
> spinal cord, central spinal cord, vertebral column or interbebral [sic]
> discs.

(*Id.* at 3, ¶ 4.)  Plaintiff further alleges that Defendant Detlie "conceded that a

possible serious medical condition existed but failed to correct the course of

treatment that could have prevented the Plaintiff from a subsequent surgery."

(*Id.*)

Plaintiff next alleges that on the following day (November 21, 2006),

Defendant Dr. Daniel Randa conducted a "neuologic [sic] consultation" on

Plaintiff.  Based on that consultation, Randa allegedly stated that –

> neurological exam shows subjective complaints or [sic] numbness
> from the infraumbilical region through out both legs diffusely except

5

for some residual preserved sensation on the bottom of the right foot.
He also states the basis for the complaint is uncertain.

(*Id.* at 3, ¶ 5.)  Randa allegedly summarized "his impression of the plaintiff's

sysptoms [sic]" as follows:

> Complaints of paraplegia and numbness from the waist down –
> etiology undetermined.  Neurological exam shows subjective
> complaints of numbness from the infraumbilical region throughout
> both legs diffusely except for some residual preserved sensation on
> the bottom of the right foot.  Both lower extremities have no voluntary
> movement  Muscle tone is normal.  Bladder function apparently is
> intact.  The basis for the complaints is uncertain.  Despite the history
> of trauma, there are no fractures, acute disk herniations, epidural
> hemorrhages, spinal cord signal abnormalities to suggest contusion,
> etc.  A pathophysiological basis to the subjective complaint is not
> apparent.  Conversion reaction and /or malingering must be
> considered.

(*Id.* at 4, ¶ 5 (emphasis presumably added by Plaintiff).)

On November 25, 2006, Plaintiff allegedly was referred to Defendant

Dr. Yasser El-Mammamy,[6] who apparently is a psychiatrist.  According to the

Complaint, Plaintiff was referred to Defendant El-Mammamy "due to his

'Malingering' condition, and for the non-movement of lower extremities as well as

for alleged conversion disorder."  (*Id.* at 4, ¶ 6.)  Defendant El-Mammamy

allegedly diagnosed Plaintiff "as having a conversion disorder" or "malingering."

(*Id.*)  Plaintiff claims that this diagnosis suggested that his injuries "were fictitious."

---

[6] This Defendant has informed the Court that the correct spelling of his name
is "El-Hammamy."  With due respect for the correct spelling of Defendant's name,
the Court will, for purposes of the present Rule 12(b)(6) motion, use the spelling that
appears in Plaintiff's pleading.

(*Id.*)

Based on the foregoing allegations, Plaintiff is now attempting to sue the

seven moving Defendants (Roberg, Schock, Loken, Zadnik, Detlie, Randa, and

El-Mammamy), under 42 U.S.C. § 1983. (*Id.* at 1.)  Plaintiff claims that

Defendants violated his federal constitutional rights under the Eighth Amendment

because they were deliberately indifferent to his serious medical needs while he

was a patient at Mercy Hospital during the period of November 19–25, 2006.

(*Id.*)[6]  Plaintiff is seeking a judgment against Defendants for "$2,5000.000.00"

---

[6]  Defendants contend that Plaintiff's Complaint does not clearly identify the legal basis for his lawsuit against them.  They acknowledge that Plaintiff is attempting to bring a § 1983 cause of action based on alleged violations of his Eighth Amendment rights, but they have suggested that he might also be attempting to bring a state common-law-tort claim for medical malpractice.  Plaintiff's pleading certainly is not a model of clarity, and it includes many words and phrases that would be more consistent with a malpractice claim than an Eighth Amendment claim. However, the allegations set forth on the first page of Plaintiff's Complaint show, very clearly and unmistakably, that he is attempting to bring a § 1983 claim based on the Eighth Amendment, and *not* a medical-malpractice claim based on common-law-tort principles.

The Court notes that if Plaintiff were attempting to bring *only* a medical-malpractice claim  (and not a § 1983 claim), this action would have to be summarily dismissed for lack of federal subject-matter jurisdiction, because there would be no basis for exercising jurisdiction under either the "federal question" statute (28 U.S.C. § 1331), or under the "diversity of citizenship" statute (28 U.S.C. § 1332).  There would be no federal question, because Plaintiff's claims would be based solely on state tort-law principles, and there would be no diversity jurisdiction, because Plaintiff and Defendants are citizens of the same state.  (Even though Plaintiff is currently confined in California, and he apparently was confined in Indiana when he commenced this action, he still is considered to be a citizen of Minnesota for purposes of determining diversity of citizenship.  *See Jones v Hadican*, 552 F.2d 249, 250–51 (8th Cir.) (*per curiam*) (stating that a prisoner litigant is presumed to be a resident of the state where he resided when he was taken into custody, unless the

[sic].  (*Id.*)

For the reasons discussed below, this Court finds that Plaintiff has failed to plead an actionable Eighth Amendment civil-rights claim against any of the moving Defendants.  This Court therefore recommends that their respective motions be granted, and that this action be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I.   Standard of Review

A claim presented in a civil complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), if the claim is not supported by sufficient factual allegations to

---

complaint "allege[s] facts sufficient to raise a substantial question about the prisoner's intention to acquire a new domicile"), *cert. denied*, 431 U.S. 941 (1977).)

If Plaintiff did intend to bring a medical-malpractice claim in this case, *as well as* § 1983 civil rights claims, or if he attempted hereafter to amend his pleading to state a new malpractice claim, that state-law-tort claim would not be heard in this action.  Because Plaintiff's § 1983 claims must be dismissed (for the reasons discussed below), it would not be appropriate to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any pendent state-law claims, including any medical-malpractice claim that Plaintiff might attempt to bring in this action.  *See Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir. 1981) ("when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims without prejudice"); *see also Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stressing "the need to exercise judicial restraint and avoid state law issues wherever possible").

In sum, this Court finds no common law medical-malpractice claim in Plaintiff's current pleading, and if Plaintiff were attempting to bring such a claim in this case, it would not be appropriate to exercise supplemental jurisdiction over that state-law claim.

state a cause of action on which relief can be granted.  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  In short, "the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

When deciding a Rule 12(b)(6) motion to dismiss, a court assumes all facts alleged in the complaint are true, and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

"When ruling on a motion to dismiss under Rule 12(b)(6) . . . , a district court generally may not consider materials outside the pleadings."  *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008).  The Court "may, however, consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'"  *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079

(8th Cir.1999)).[7]

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*).  However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions."); *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) ("At the very least . . . the complaint must contain *facts* which state a claim as a matter of law and must not be conclusory.").

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain enough specific facts "to raise a right to relief above the speculative level." *Id.* at 555.

"[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly

---

[7]   In this case, Plaintiff has supplemented his opposition to Defendants' motions to dismiss by filing an unexplained collection of "Exhibits." (Doc. No. 100.) This Court has reviewed those Exhibits, and finds that they do not add any significant facts beyond those that have already been pleaded in Plaintiff's Complaint. Therefore, while Plaintiff's Exhibits have been accepted and considered, they do not affect the resolution of Defendants' motions to dismiss.

raised," nor is the court required to "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

To successfully plead a § 1983 civil rights cause of action, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County*, 954 F.Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil-rights claimants must plead facts showing each defendant's *personal* involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil-rights claims because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim"). In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color

of state law, that purportedly violated the plaintiff's federal constitutional rights.[8]

## II.  Analysis

Although this matter is presently before this Court on three separate

motions to dismiss, this Court finds that all three motions are very similar.  They

raise nearly the same arguments, and can easily be resolved together.

Therefore, except as otherwise noted, this Court will address all three of

Defendants' pending motions together.

### A.  State Action

All Defendants initially contend that Plaintiff has failed to plead an

actionable § 1983 claim against them, because he has failed to allege that they

acted under color of state law.  This argument must be sustained.

Only parties acting under color of state law can be sued in a § 1983 civil-

rights action.  *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th

Cir. 2001), *cert. denied*, 535 U.S. 1017 (2002).  Therefore, a complaint cannot

---

[8]  The Court notes that Plaintiff apparently was a prisoner of the *federal* government at all times relevant to his present civil-rights claims.  This raises a question as to whether Plaintiff's current claims can properly be brought under 42 U.S.C. § 1983, or whether they should have been brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) ("An action under *Bivens* is almost identical to an action under § 1983, except that the former is maintained against federal officials while the latter is against state officials."). Because Plaintiff apparently was being detained by a county sheriff when his claims arose, this Court will assume, for now, that his claims can properly be brought under § 1983.  As a practical matter, however, it makes no difference whether Plaintiff's claims are properly brought under § 1983 or under *Bivens*, because the substantive requirements of both of those causes of action are virtually identical.  *See Id.*

state an actionable § 1983 civil-rights claim unless the complainant has alleged facts showing that the named defendants were acting under color of state law when they allegedly violated the complainant's constitutional rights.

If a defendant is being sued for acts or omissions that occurred while he or she was acting as an *employee* of a state or local government, then that defendant is presumed to be a state actor for § 1983 purposes.  *See West v. Atkins*, 487 U.S. at 49 (stating that "state employment is generally sufficient to render the defendant a state actor") (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, n. 18 (1982)).

In this case, however, there are no allegations suggesting that any of the moving Defendants are government employees.  To the contrary, it appears that all of the moving Defendants are private sector health-care providers.  All of the events giving rise to Plaintiff's lawsuit apparently occurred at Mercy Hospital, and there is nothing in the Complaint to suggest that Mercy Hospital is operated by any governmental entity, or that its employees are governmental employees.  Therefore, Defendants cannot be *presumed* to be state actors.

It is true that a party does not have to be a state employee to be acting under color of state law for § 1983 purposes.  A party can be considered a state actor for purposes of § 1983 without being an actual employee of the state.  *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 584 (8th Cir. 2006) ("A private party may be deemed a state actor for purposes of section 1983 liability

13

when he acts under cover of state law and performs a function 'traditionally

exclusively reserved to the state.'") (quoting *Jackson v. Metro. Edison Co.*, 419

U.S. 345, 352 (1974)).  But again, if a defendant in a § 1983 action is not a state

employee, then that defendant is not presumed to be a state actor, and the

complainant must plead a set of facts showing how and why that defendant

allegedly was acting under color of state law, and should be treated as a state

actor for § 1983 purposes.  If such facts have not been pled, the complaint fails to

satisfy an elemental pleading requirement for an actionable § 1983 claim – i.e.,

that the defendant acted under color of state law.

Here, Plaintiff has not alleged any facts showing that any of the moving

Defendants was acting under color of state law during any of the events on which

this lawsuit is based.  For this reason alone, this Court finds that Plaintiff has

failed to plead an actionable § 1983 claim against any of the moving Defendants.

*See Hernandez v. Palakovich*, No. 1:CV-05-1655, 2010 WL 4683822, at *7

(M.D.Pa. Nov. 10, 2010) (stating that the Pennsylvania state prisoner failed to

plead an actionable Eighth Amendment civil-rights claim against a private hospital

and doctor because "[t]here is nothing in the complaint to suggest that any type of

relationship existed between the State of Pennsylvania, the healthcare provider

and Plaintiff").

### B.    Eighth Amendment Liability

Defendants further contend that even if they could be viewed as state

actors for § 1983 purposes, Plaintiff still has failed to plead an actionable § 1983

claim against them, because he has not alleged a set of facts showing that they

violated his Eighth Amendment rights.  Again, this Court agrees with Defendants.

A state actor can be sued under § 1983 for violating a prisoner's Eighth

Amendment rights if that person has acted with "deliberate indifference" to the

prisoner's "serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

The Eighth Circuit Court of Appeals has explained that –

An Eighth Amendment claim that prison officials were deliberately
indifferent to the medical needs of inmates involves both an objective
and a subjective component . . . . The plaintiffs must demonstrate
(1) that they suffered objectively serious medical needs and (2) that
the prison officials actually knew of but deliberately disregarded
those needs.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted).

"A prison official exhibits deliberate indifference when the official actually

'knows of and disregards' a prisoner's serious medical needs."  *Boyd v. Knox*, 47

F.3d 966, 968 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837

(1994)); *see also Mays v. Rhodes*, 255 F.3d 644, 649 (8th Cir. 2001) ("Deliberate

indifference requires proof that [the prisoner-plaintiff] suffered objectively serious

medical needs and that the [defendants] actually knew of these needs but

deliberately disregarded them.").

Medical malpractice alone . . . is not actionable under the Eighth
Amendment . . . . For a claim of deliberate indifference, 'the prisoner
must show more than negligence, more even than gross negligence,
and mere disagreement with treatment decisions does not rise to the
level of a constitutional violation.'

*Popoalii v. Correctional Med. Servs.*,  512 F.3d 488, 499 (8th Cir. 2008) (citation

omitted) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.

1995)).  A prisoner cannot maintain a deliberate indifference claim simply

because he disagrees with his medical treatment.  *Jolly v. Knudsen*, 205 F.3d

1094, 1096 (8th Cir. 2000) ("[M]ere disagreement with treatment decisions does

not rise to the level of a constitutional violation.") (quoting *Estate of Rosenberg*,

56 F.3d at 37); *see also Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990)

(stating that a prisoner's Eighth Amendment claims were properly dismissed on

summary judgment because they were based on "nothing more than mere

disagreement with the course of his medical treatment").

    As the Court of Appeals explained in *Long v. Nix*, 86 F.3d 761, 765 (8th

Cir. 1996):

> [N]othing in the Eighth Amendment prevents prison doctors from
> exercising their independent medical judgment.  *White v. Farrier*, 849
> F.2d 322, 327 (8th Cir. 1988).  Prisoners do not have a constitutional
> right to any particular type of treatment.  *See id.* at 327–28.  Prison
> officials do not violate the Eighth Amendment when, in the exercise
> of their professional judgment, they refuse to implement a prisoner's
> requested course of treatment.  *Taylor v. Turner*, 884 F.2d 1088,
> 1090 (8th Cir. 1989); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir.
> 1994).

    With these standards in mind, this Court has reviewed the various claims of

deliberate indifference that Plaintiff is attempting to bring against the moving

Defendants.  Having carefully examined Plaintiff's Complaint, this Court finds that

Plaintiff has not described any specific acts or omissions by any of the named

16

Defendants that could constitute deliberate indifference to his medical needs.

Thus, this Court concludes that none of Plaintiff's Eighth Amendment claims can

withstand Defendants' motions to dismiss.

### (i)   Defendant Roberg

Plaintiff alleges that he was seen by Defendant Roberg in the Emergency

Department (presumably at Mercy Hospital), on November 16, 2006.  He further

alleges that Roberg performed a preliminary examination and determined that

Plaintiff "may have a lumbar contusion and there were degenerative disc

changes."  (TAC at 2, ¶ 1.)  After diagnosing Plaintiff's condition as "1) closed

head injury 2) Cervical strain 3) Lumbar contusion and 4) Bilateral lower extremity

weakness," Roberg allegedly discussed his diagnosis with two other doctors, and

recommended that Plaintiff should be admitted to the hospital.  (*Id.*)  The

Complaint does not describe anything else that Defendant Roberg allegedly did

or failed to do.

Plaintiff's sparse allegations pertaining to Defendant Roberg do not

describe any conduct that could be viewed as a violation of Plaintiff's Eighth

Amendment rights.  According to the Complaint, Defendant Roberg simply

examined Plaintiff, diagnosed his condition, consulted with two other doctors, and

recommended that Plaintiff should be admitted to the hospital.  Those alleged

actions certainly do not show any deliberate indifference to Plaintiff's medical

needs.

17

### (ii)   Defendant Schock

Defendant Schock allegedly informed a neurosurgeon about Plaintiff's condition as of November 20, 2006, and he allegedly told the neurosurgeon that "[a]t this point, it does not appear to be [a] surgical condition."  (TAC at 2, ¶ 2.) Plaintiff claims that Schock "misdiagnosed the plaintiffs [sic] condition as one that would not need surgery which could have prevented the subsequent surgery." (*Id.*)  However, nothing in the Complaint suggests that Schock was deliberately indifferent to Plaintiff's condition.  At worst, it appears that Schock might have been mistaken about Plaintiff's condition.  Plaintiff's contention that Schock "misdiagnosed" his condition clearly implies that Schock made a mistake.  There are no allegations suggesting that Schock knew that Plaintiff needed some particular surgery, but deliberately ignored Plaintiff's need for that surgery.

Furthermore, it appears that Schock was a physicians' assistant who merely shared his understanding of Plaintiff's condition with a neurosurgeon. There are no allegations suggesting that Schock himself made any decisions, or took any actions, that affected any medical treatment that Plaintiff did or did not receive.  Therefore, Schock's alleged errors could not have actually caused Plaintiff any harm.

Viewed in a light most favorable to Plaintiff, his Complaint alleges that Defendant Schock mistakenly told a doctor that he (Plaintiff) did not appear to need surgery.  If Schock did make such a mistake, he did not violate Plaintiff's

18

federal constitutional rights by doing so.

### (iii)   Defendant Loken

Defendant Loken allegedly co-authored a "status report" that described Plaintiff's medical condition as of November 20, 2006.  There are no allegations suggesting that the status report contained any misinformation or caused Plaintiff any harm.  The allegation that Loken co-authored a status report does not show that she was deliberately indifferent to Plaintiff's medical needs, or otherwise violated his federal constitutional rights.

Plaintiff also alleges that Loken acted "with deliberate indifference to the Plaintiff's medical needs by refusing to properly treat the Plaintiffs [sic] medical condition other than 'malingering.'" (TAC at 3, ¶ 3.)  This is not a factual allegation; it is a conclusory allegation, which is not supported by any specific facts.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  Thus, a prisoner does not state an actionable Eighth Amendment claim by merely alleging, in conclusory fashion, that some state actor was deliberately indifferent to his medical needs because that person allegedly did not provide him adequate medical care.  Because Plaintiff has not alleged any facts showing that Loken was deliberately indifferent to his serious medical needs, he has failed to plead an actionable Eighth Amendment claim against her.

### (iv)   Defendant Zadnik

The allegations against Defendant Zadnik are intertwined with, and virtually identical to, the allegations against Defendant Loken.  Thus, this Court finds that Plaintiff has failed to plead an actionable claim against Zadnik for the same reasons that he failed to plead an actionable claim against Loken – i.e., (1) the allegation that Zadnik co-authored a report with Loken does not support a claim of deliberate indifference, and (2) Plaintiff has not alleged any other facts that would support his conclusory assertion that Zadnik acted with deliberate indifference to his medical needs.

### (v)   Defendant Detlie

Plaintiff alleges that Defendant Detlie "wrote a final report on the Plaintiff's condition" on November 20, 2006.  (TAC at 3, ¶ 4.)  He further alleges that "Defendant Detlie had conceded that a possible serious medical condition existed but failed to correct the course of treatment that could have prevented the Plaintiff from a subsequent surgery."  (*Id.*)  Plaintiff's Complaint does not contain any other allegations pertaining to Defendant Detlie.

Although it is alleged that Detlie "failed to correct the course of treatment," the Complaint does not describe what Plaintiff believes the correct course of treatment might have been.  In addition, Plaintiff has not alleged any facts showing that Detlie was aware of the correct course of treatment, that Detlie could have implemented the correct course of treatment, or that Detlie

deliberately chose not to implement the correct course of treatment.  Simply put, there are no specific factual allegations showing that Detlie was deliberately indifferent to Plaintiff's serious medical needs.

### (vi)   Defendant Randa

Defendant Randa also allegedly authored a report about Plaintiff's condition.  Randa's report noted Plaintiff's subjective complaints, but found "no fractures, acute disk herniations, epidural hemorrhages, spinal cord signal abnormalities to suggest contusion, etc." (TAC at 4, ¶ 5.)  Randa allegedly concluded that because "[a] pathophysiological basis to the subjective complaint is not apparent . . . [c]onversion reaction and/or malingering must be considered." (*Id.*)

Plaintiff contends that Randa "misdiagnosed" his condition by suggesting that "conversion reaction and/or malingering must be considered."[9]  (*Id.*)

---

[9]  A conversion reaction, or disorder, apparently is a psychiatric malady that causes a patient to experience symptoms that cannot be explained by objectively identifiable causes.  As explained in one federal court case –

> [A] conversion disorder 'is . . . a psychiatric diagnosis . . . where there is no actual physical injury occurring but the patient responds with a psychiatric illness that manifests itself as clinical symptoms.' . . . [A] conversion disorder [is distinguishable] from a malingering syndrome . . . [because] a malingering syndrome has a 'volitional component in it.'. . . By contrast, a patient with a conversion disorder, 'unbeknownst to himself, develops a symptom complex that can be very debilitating [ ] and is very real.'

*Shaw v. Sec'y of Dept. of Health and Human Servs.*, No. 01-707V, 2009 WL 3007729, at *21 (Ct. Fed. Cl. Aug. 31, 2009) (citations omitted); *see also Easter v.*

However, Plaintiff cannot base an Eighth Amendment claim on that contention for two reasons.  First, the facts alleged in the Complaint belie the notion that Randa actually diagnosed either a "conversion reaction" or malingering.  The Complaint itself plainly shows that Randa merely indicated that those two possibilities "must be considered."  Second, even if Randa did diagnose a conversion reaction or malingering, and even if that proved to be a *mis*diagnosis (as Plaintiff contends), those "facts" would not support an Eighth Amendment claim.

This Court finds no factual allegations in Plaintiff's Complaint that, if proven true, would establish that Randa was deliberately indifferent to Plaintiff's medical needs.  Even if the allegations in the Complaint are given full credence, and construed most favorably to Plaintiff, they show only that Randa made a mistake, i.e., a "misdiagnosis."  However, "[n]egligent misdiagnosis does not create a cognizable claim under § 1983."  *McRaven v. Sanders* , 577 F.3d 974, 982 (8th Cir. 2009).  Therefore, Plaintiff has failed to plead an actionable Eighth Amendment claim against Defendant Randa.

### (vii)   Defendant El-Mammamy

The allegations offered in support of Plaintiff's claim against Defendant El-

---

*Bowen*, 867 F.2d 1128, 1129 (8th Cir. 1989) (stating that a conversion disorder causes a patient to "believe that her physical ailments are more serious than the clinical data would suggest, . . . [but] conversion disorder is not under a patient's voluntary control.  In other words, . . . [the patient] experiences her physical problems as worse than they may in fact be, and is unable to control this response.").

Mammamy are set forth in a single paragraph of the Complaint.  (TAC at 4, ¶ 6.) Liberally construed, that paragraph appears to say that Plaintiff was referred to Defendant El-Mammamy for a psychiatric examination, and on the basis of that examination, El-Mammamy opined that Plaintiff had "a conversion disorder or was malingering."  (*Id.*)  Plaintiff obviously believes that El-Mammamy's opinion was wrong.  He claims that he "subsequently had a surgery that contradicted all of the allegations of the defendants" – i.e., that he had a conversion disorder or was malingering.  He further claims "that surgery could have been prevented if the defendant would not have acted deliberately indifferent to the Plaintiffs [sic] medical needs in the beginning."  (TAC at 5.)

Although Plaintiff's Complaint includes a conclusory assertion that Defendant El-Mammamy "was deliberately indifferent to the plaintiffs [sic] medical needs" (TAC at 4, ¶ 6), the Complaint does not allege any *facts* that could support that legal conclusion.  Plaintiff has alleged only that El-Mammamy "diagnos[ed] the Plaintiff as having a conversion order or was malingering."  (*Id.*) Even if that diagnosis was, in fact, indisputably wrong, that error would not be sufficient to establish deliberate indifference.

To establish *deliberate* indifference Plaintiff would have to allege (and ultimately prove) a set of facts showing that Defendant El-Mammamy knew (or must have known) that Plaintiff was not suffering from a conversion disorder or malingering, and that El-Mammamy deliberately offered an opinion that he knew

(or must have known) was false.  Plaintiff's Complaint does not allege any such facts.

It bears repeating that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 129 S.Ct. at 1950.  When deciding a Rule 12(b)(6) motion, "[c]ourts must accept a plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions."  *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).  Here, Plaintiff claims El-Mammamy was deliberately indifferent to his medical needs, but that legal conclusion is not supported by any specific factual allegations in the Complaint.  Plaintiff has alleged only that El-Mammamy misdiagnosed his condition, but that "misdiagnosis" allegation is not sufficient to show deliberate indifference.    *McRaven*, 577 F.3d at 982. Therefore, this Court finds that Plaintiff has failed to plead an actionable Eighth Amendment claim against Defendant El-Mammamy.

For the reasons discussed herein, this Court finds that even with the benefit of liberal construction, the facts alleged in Plaintiff's current Complaint do not support an actionable Eighth Amendment claim against any of the moving Defendants.

## C.    Leave to Amend

Although Plaintiff has not specifically requested leave to replead, Defendants have argued that he should not be allowed to file yet another

24

amended complaint.  This Court agrees.

As Defendants have correctly pointed out, Plaintiff has already had three chances to try to plead actionable claims against the moving Defendants, and he still has not succeeded in doing so.  Based on this track record alone, this Court could reasonably conclude that it would be futile to let Plaintiff try one more time to plead a cause of action on which relief could be granted.  *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir. 1994) ("Good reason to deny leave to amend exists if the amendment would be futile.").

More importantly, it plainly appears from Plaintiff's submissions in this case that he simply has no factual basis for bringing any § 1983 civil-rights claim against any of the moving Defendants.  Plaintiff's submissions show that his claims against Defendants are based on a critical misunderstanding of the Eighth Amendment.  Plaintiff obviously believes that Defendants violated his Eighth Amendment rights because they *negligently* failed to properly treat his medical needs.  This belief is reflected throughout all of Plaintiff's submissions, but it appears most vividly, perhaps, in Plaintiff's initial response to Defendants' motions to dismiss.  There, Plaintiff states that "Defendant's [sic] *negligent* acts has victimized the Plaintiff and deprives him of 8th Amendment protections under the constitution."  (Doc. No. 99, Pl.'s Reply to Defs.' Mot. to Deny the Compl. 1 (emphasis added).)  In the same document, Plaintiff also states that "Defendants were not immuned [sic] from suit and should be held liable for their *misfeasance*,

25

where medical training and ethnics [sic] prohibits ill treatment, even the incarcerated, *and the 8th Amendment safe guards such neglect, misdiagnosis, or malpractice*." (*Id.* at 2 (emphasis added).)  These two statements demonstrate that Plaintiff erroneously believes Defendants violated his Eighth Amendment rights because they were (allegedly) negligent.

Further, the two quoted sentences from Plaintiff's reply brief are not just isolated misstatements; they accurately reflect the theory on which Plaintiff's lawsuit is based.  Plaintiff has consistently indicated throughout his pleadings and other submissions that he is attempting to sue Defendants for "neglect," "misfeasance," "misdiagnoses," and "malpractice."  In other words, Plaintiff is claiming that Defendants violated his constitutional rights under the Eighth Amendment because they were negligent.  That claim, however, is fatally defective.  The Supreme Court has explicitly ruled that –

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 106.

This Court finds that Plaintiff's current lawsuit is fatally flawed because it is predicated on a defective legal theory – i.e., that Defendants violated Plaintiff's federal constitutional rights because they were negligent.  That fatal flaw cannot be cured by simply alleging more facts.  Therefore, this Court recommends that

Plaintiff's Complaint be dismissed without further leave to amend.[10]

## CONCLUSION

For the reasons discussed above, this Court concludes that all of

Defendants' Rule 12(b)(6) motions should be granted, and Plaintiff's Complaint

should be dismissed, without leave to amend, with respect to all of the moving

Defendants.  This Court further finds that this action should be dismissed, without

prejudice, with respect to Defendant P.K., for lack of timely service of process.

(*See* n.2, *supra*.)

Finally, this Court notes that Plaintiff has filed a self-styled motion entitled

"Plaintiff's Motion for Appointment of a Court Appointed Medical Expert Witness."

(Doc. No. 82.)  Plaintiff apparently wants the Court to appoint a "medical expert"

---

[10] As discussed at n.6, *supra*, this Court finds that Plaintiff's current Complaint does not purport to state any common law medical-malpractice claims.  Therefore, this Court presently makes no findings or rulings on whether Plaintiff might still be able to pursue any such claims against any of the Defendants.  However, if Plaintiff hereafter tries to bring a new lawsuit against any of the Defendants for medical malpractice, he presumably will have to pursue that action in state court (unless he can overcome the presumption of non-diversity of citizenship discussed at n. 6, *supra*), and will be subject to the Minnesota statute of limitations on such claims.  Furthermore, Plaintiff will have to comply with Minnesota state law governing the procedures for the commencement of medical-malpractice cases, which is discussed extensively in Defendants' various memoranda in support of their current motions to dismiss.  Plaintiff has now been alerted to the affidavit requirements prescribed by Minnesota's statutes pertaining to malpractice claims, and if he attempts to file a new lawsuit that does not comply with those requirements, he will not only be wasting his time, but he could subject himself to sanctions for filing a frivolous lawsuit.  Therefore, Plaintiff should not rush into state court with a medical-malpractice complaint, without first carefully considering whether he can plead a cause of action that will satisfy the stringent requirements of the applicable state law that Defendants have called to his attention.

to examine him and his medical records, and then provide an opinion that will support his efforts to sue the Defendants.  Plaintiff has cited no legal authority in support of his request for appointment of an expert witness.  Furthermore, it appears that Plaintiff is seeking the appointment of a medical expert in an effort to rebut Defendants' opposition to the common-law-malpractice claim that Defendants thought Plaintiff might be trying to bring in this action.  However, this Court has determined that Plaintiff has not actually attempted to plead a common-law-malpractice claim (*see* n.6, *supra*), so Plaintiff would not need a medical expert to support his claim here.  This Court therefore recommends that Plaintiff's pending motion for appointment of a medical expert be denied.

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  The motion to dismiss filed by Defendants Andrew Schock, Daniel Randa and Tore Detlie (Doc. No. 62), be **GRANTED**;

2.  The motion to dismiss filed by Defendants Linda Loken, Martin Zadnik, and Yasser El-Mammamy (Doc. No. 74), be **GRANTED**;

3.  The motion to dismiss filed by Defendant Jeffrey J. Roberg (Doc. No. 68), be **GRANTED**;

4.  Plaintiff's claims against Defendant P.K. be dismissed without prejudice;

5.  Plaintiff's Motion for Appointment of a Court Appointed Medical Expert

28

Witness" (Doc. No. 82), be **DENIED**; and

      6.  This action be **DISMISSED**.


Date: May 24, 2011

                       _s/ Jeffrey J. Keyes_
                       JEFFREY J. KEYES
                       United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 7, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.